```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
    _____

    MR. RENE' D. EDWARDS,                  Civil No. 16-5702 (NLH/AMD)

              Plaintiff,
                                           **MEMORANDUM OPINION**
         v.                                **AND ORDER**

    JAMES R. GAHM, et al.,

              Defendants.

    _____
```

**APPEARANCES:**

Mr. Rene' D. Edwards
703 Whitehorse Pike
Atco, New Jersey 08004
    *Pro Se Plaintiff*

**HILLMAN, District Judge**

This matter having come before the Court by way of Plaintiff's application [Doc. No. 1-2] to proceed in forma pauperis ("IFP application"); and

The Court having granted Plaintiff's IFP application by Order [Doc. No. 3] dated September 21, 2016 and having found that Plaintiff's Complaint was subject to sua sponte screening by the Court 28 U.S.C. § 1915(e)(2)(B);[1] and

---

[1] Although Section 1915 refers to "prisoners," federal courts apply Section 1915 to non-prisoner IFP applications as well. See, e.g., Hickson v. Mauro, 2011 WL 6001088, *1 (D.N.J. 2011) (citing Lister v. Dept. of Treasury, 408 F.3d 1309, 1312 (10th Cir. 2005) ("Section 1915(a) applies to all persons applying for IFP status, and not just to prisoners.") (citing Martinez v. Kristi Kleaners, Inc., 364 F.3d 1305, 1306 n. 1 (11th Cir.

The Court recognizing that under the Prison Litigation Reform Act ("PLRA"), the Court must review the complaint in a civil action in which a plaintiff is proceeding in forma pauperis. See 28 U.S.C. § 1915(e)(2)(B). The PLRA requires the Court to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Id.; and

The Court further noting that a "document filed pro se is to be liberally construed, ... and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted); see also Haines v. Kerner, 404 U.S. 519, 520 (1972); and

---

2004); Haynes v. Scott, 116 F.3d 137, 140 (5th Cir. 1997); Floyd v. United States Postal Serv., 105 F.3d 274, 275 (6th Cir. 1997)); El Ameen Bey v. Stumpf, No. 11-5684, 2011 WL 4962326, at * 11 n.7 (D.N.J. Oct. 17, 2011) (Kugler, J.) ("Although Section 1915(a) refers to a 'statement of all assets such prisoner possesses,' this section has been applied by courts in their review of applications of non-prisoners as well.") (citing Douris v. Middletown Twp., 293 F. App'x 130 (3d Cir. 2008) ("The reference to prisoners in § 1915(a)(1) appears to be a mistake. In forma pauperis status is afforded to all indigent persons, not just prisoners.")).

It appearing from the Complaint that Plaintiff is asserting claims pursuant to 42 U.S.C. § 1983 alleging violations of his Fourth and Fourteenth Amendment rights under the Constitution including counts for false arrest, false imprisonment, and malicious prosecution, (See Compl. [Doc. No. 1] 2-5); and

It further appearing from the Complaint and the attachments thereto, that the following facts are relevant to Plaintiff's claims in this matter: In 1986 Plaintiff was convicted in state court in New Jersey of an offense that subjected him to Megan's Law.[2] (Compl. [Doc. No. 1] "Decision", 9.) Based on that conviction, Plaintiff was later subjected to the GPS monitoring requirements set forth under the Sex Offender Monitoring Act ("SOMA"), see N.J.S.A. § 30:4-123.89 et seq. On March 5, 2008, Plaintiff was arrested and charged for his failure to comply

---

[2] By way of background, "[i]n 1994, seven year old Megan Kanka was abducted, raped, and murdered near her New Jersey home by a neighbor who had previously been convicted of sex offenses against young girls. Thereafter, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, title 17, § 170101, 108 Stat.2038, as amended, 42 U.S.C. § 14071, which condition[ed] certain federal funds for law enforcement on the States' adoption of a Megan's Law, so named after Megan Kanka. By 1996, every State, the District of Columbia, and the Federal Government had passed a Megan's Law. While these laws vary from State to State, they generally require convicted sex offenders to register with law enforcement officials, who then notify community members of the registrants' whereabouts." A.A. ex rel. M.M. v. New Jersey, 341 F.3d 206, 208 (3d Cir. 2003).

with the GPS monitoring requirements under SOMA.  (Id.)
Plaintiff entered a plea of guilty to that charge in May of 2010 and was sentenced on July 9, 2010.  (Id.)  In 2014, approximately four years after he was sentenced (and six years after he was initially arrested for the SOMA charge), the New Jersey Supreme Court ruled in Riley v. New Jersey State Parole Board, 219 N.J. 270, 291-298 (2014), the GPS monitoring requirements under SOMA were not applicable to defendants who committed offense prior to the effective date of the Act.  (Id. at 10.)  Based on the holding in Riley, Plaintiff filed a petition for Post-Conviction Relief in New Jersey in 2015 essentially arguing that he fell within the category of individuals described in Riley to whom SOMA's GPS monitoring requirements should not have applied.  (Id.)  By Decision and Order dated July 13, 2016, the New Jersey Superior Court granted Plaintiff's PCR petition, concluded that Plaintiff "should have never been subjected to the GPS monitoring requirements" of SOMA, and vacated Plaintiff's convictions under the Act.  (Id. at 8, 10-11.); and

Plaintiff now essentially alleging that the individuals named as Defendants in this action -- various parole officers, police officers, and prosecutors involved in his 2008 arrest and

2010 plea agreement -- violated Plaintiff's Constitutional rights at the time they arrested and prosecuted him in 2008 for failing to comply with the GPS monitoring requirements of SOMA because he never should have been subjected to those requirements in the first place, (Id. at 2-5); and

Plaintiff attempting to bring claims pursuant to 42 U.S.C. § 1983 for false arrest, false imprisonment, and malicious prosecution in violation of his Fourth and Fourteenth Amendment rights arising out of his 2008 arrest regarding his failure to comply the GPS monitoring requirements under SOMA; and

The Court noting that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." Morrow v. Balaski, 719 F.3d 160, 165-66 (3d Cir. 2013) (citing Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)). The Court's "'first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to [then] determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Morrow, 719 F.3d at 166 (quoting Nicini, 212 F.3d at 806); and

The Court finding that, at this time, the facts of the

Complaint and the attachments attached thereto, construed liberally, do not warrant dismissal at the screening phase; and

The Court further finding that Plaintiff's motion for appointment of counsel, however, is premature. While there is no right to counsel in a civil case, see Tabron v. Grace, 6 F.3d 147, 153-54 (3d Cir. 1993); Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997)), pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." In deciding whether counsel should be appointed, the Court first considers whether a claim or defense has "arguable merit in fact and law," and, if it does, the Court then considers additional factors, which include: (1) the applicant's ability to present his or her case; (2) the complexity of the legal issues presented; (3) the degree to which factual investigation is required and the ability of the applicant to pursue such investigation; (4) whether credibility determinations will play a significant role in the resolution of the applicant's claims; (5) whether the case will require testimony from expert witnesses; and (6) whether the applicant can afford counsel on his or her own behalf. Tabron, 6 F.3d at 155-157. Plaintiff's motion, however, does not sufficiently address any of these factors. Plaintiff is granted leave to

file a renewed motion for appointment of pro bono counsel, fully addressing each of these factors, once the case progresses further.

Accordingly,

IT IS on this   21st   day of   December  , 2017, hereby

**ORDERED** that the Clerk is directed to file Plaintiff's Complaint; and it is further

**ORDERED** that Plaintiff's motion [Doc. No. 2] seeking appointment of pro bono counsel shall be, and hereby is, **DENIED WITHOUT PREJUDICE;** and it is further

**ORDERED** that, the Clerk shall mail to Plaintiff a transmittal letter explaining the procedure for completing United States Marshal ("Marshal") 285 Forms ("USM-285 Forms"); and it is further

**ORDERED** that, once the Marshal receives the USM-285 Forms from Plaintiff and the Marshal so alerts the Clerk, the Clerk shall issue summons in connection with each USM-285 Form that has been submitted by Plaintiff, and the Marshal shall serve summons, the Complaint and this Order to the address specified on each USM-285 Form, with all costs of service advanced by the United States;[3] and it is further

---

[3] Alternatively, the U.S. Marshal may notify Defendants that an

7

**ORDERED** that Defendants shall file and serve a responsive pleading within the time specified by Federal Rule of Civil Procedure 12.

At Camden, New Jersey

    s/ Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.

---

action has been commenced and request that Defendants waive personal service of a summons in accordance with FED. R. CIV. P. 4(d).