**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

MR. RENÉ D. EDWARDS,                    1:16-cv-5702-NLH-AMD

          Plaintiff,          **OPINION**

    v.

JAMES R. GAHM, et al.,

          Defendants.

---

<u>**APPEARANCES**</u>:

RENÉ D. EDWARDS
SUMMIT PLACE APARTMENTS
411 EAST GIBBSBORO ROAD
APT. 110
LINDENWOLD, NJ 08021
    Appearing *pro se*

MELIHA ARNAUTOVIC
OFFICE OF THE ATTORNEY GENERAL OF NJ
25 MARKET ST, 7TH FL, WEST WING
PO BOX 116
TRENTON, NJ 08625
    On behalf of Defendants

<u>**HILLMAN**</u>, **District Judge**

    This case concerns claims by Plaintiff regarding his arrest and conviction for violating the Sex Offender's Monitoring Act, a conviction which was vacated four years later after the New Jersey Supreme Court deemed the retroactive application of the Act to be unconstitutional. Presently before the Court are the

motions of Defendants, a New Jersey state court prosecutor and
two parole officers, to dismiss Plaintiff's claims against them.
(Docket No. 25, 37.)  Also pending are Plaintiff's "motion for
jury trial," motion for default and default judgment, "motion
for a hearing," and motion to appoint pro bono counsel.  (Docket
No. 38, 39, 41, 47.)  For the reasons expressed below,
Defendants' motions will be granted, and Plaintiff's motions
will be denied.

### BACKGROUND

According his complaint, Plaintiff, Mr. René D. Edwards,
was convicted in 1986 in New Jersey state court of an offense
that subjected him to Megan's Law.[1]  (Compl. [Doc. No. 1]
"Decision," 9.)  Based on that conviction, Plaintiff was later
subjected to the GPS monitoring requirements set forth in the
Sex Offender Monitoring Act ("SOMA"), see N.J.S.A. 30:4-123.89

---

[1]     By way of background, "[i]n 1994, seven year old Megan
Kanka was abducted, raped, and murdered near her New Jersey home
by a neighbor who had previously been convicted of sex offenses
against young girls.  Thereafter, Congress passed the Jacob
Wetterling Crimes Against Children and Sexually Violent Offender
Registration Act, title 17, § 170101, 108 Stat.2038, as amended,
42 U.S.C. § 14071, which condition[ed] certain federal funds for
law enforcement on the States' adoption of a Megan's Law, so
named after Megan Kanka.  By 1996, every State, the District of
Columbia, and the Federal Government had passed a Megan's Law.
While these laws vary from State to State, they generally
require convicted sex offenders to register with law enforcement
officials, who then notify community members of the registrants'
whereabouts."  A.A. ex rel. M.M. v. New Jersey, 341 F.3d 206,
208 (3d Cir. 2003).

<u>et</u> <u>seq.</u>  On March 4, 2008, Plaintiff was arrested and charged for his failure to comply with the SOMA GPS monitoring requirements.[2]  (<u>Id.</u>)  Plaintiff entered a plea of guilty to that charge in May 2010 and was sentenced on July 9, 2010.  (<u>Id.</u>)

In 2014, approximately four years after he was sentenced (and six years after he was initially arrested for the SOMA charge), the New Jersey Supreme Court ruled in <u>Riley v. New Jersey State Parole Board</u>, 219 N.J. 270, 291-298 (2014) that the GPS monitoring requirements under SOMA were not applicable to defendants who committed a SOMA-implicating offense prior to the effective date of the Act.  (<u>Id.</u> at 10.)  Based on the holding in <u>Riley</u>, in 2015 Plaintiff filed a petition for Post-Conviction Relief, essentially arguing that he fell within the category of individuals described in <u>Riley</u> to whom SOMA's GPS monitoring requirements should not have applied.  (<u>Id.</u>)  By Decision and Order dated July 13, 2016, the New Jersey Superior Court granted Plaintiff's PCR petition, concluded that Plaintiff "should have never been subjected to the GPS monitoring requirements" of SOMA, and vacated Plaintiff's SOMA conviction.  (<u>Id.</u> at 8, 10-11.)

Plaintiff alleges that Defendants - Senior Parole Officer

---

[2] Plaintiff claims that he was at home at the time and had no knowledge that the GPS had malfunctioned.

James R. Gahm, First Assistant Prosecutor Dana Petrone, and

Parole Officer Andrew LaRue[3] – committed false arrest, false

imprisonment, and malicious prosecution in violation of his

Fourth and Fourteenth Amendment rights[4] at the time they

---

[3] Plaintiff has also named as Defendants "Sgt. Steven Jordan,
Manager New Jersey State Parole," "Mr. James Samalonis, G.P.S. /
Officer-of-N.J.S.P.," "Mr. PTLM – Burrows, Lindenwold Police
Officer," and "Mr. Ronald Berreman, G.P.S. – Officer-of-
N.J.S.P." It appears that Defendant Burrows was served with
summons and Plaintiff's complaint on January 8, 2018. (Docket
No. 16 at 1.) The summonses for the other Defendants were
returned as unexecuted. (Docket No. 27-30.) The Court
previously denied Plaintiff's motion for default judgment
against all the Defendants because Plaintiff had not first
obtained a clerk's entry of default. (Docket No. 31.) The
Court noted that the denial of his motion was without prejudice
to his right to prosecute his claims against the remaining
defendants if he chose to do so, but the Court also noted that
if Plaintiff obtained a Clerk's entry of default against any of
the Defendants, and then refiled a motion for default judgment
against that Defendant or Defendants, he was required to do more
than demonstrate that Defendants had failed to appear in the
action. (Docket No. 31 at 5-6 at n.5.) Since that time,
Plaintiff has obtained a clerk's entry of default against
Burrows. (See Docket Entry for June 1, 2018.) Plaintiff has
not served the other Defendants. The resolution of Plaintiff's
claims against these Defendants is discussed below. See, infra,
Section C.2.

[4] In his complaint, Plaintiff claims that he was handcuffed
too tightly and ultimately required surgery. It is not clear
from the complaint, however, who actually performed the
handcuffing. The complaint also lacks any other facts
concerning the circumstances of his handcuffing – i.e., how long
he was handcuffed, whether he asked for his handcuffs to be
loosened, etc. Attached to the complaint is the New Jersey
State Parole Board, Division of Parole, Special Report, which
describes the circumstances of Plaintiff's arrest. (Docket No.
1 at 12.) The statement relates that five members of the
Division of Parole were present when Plaintiff was taken into
custody. Plaintiff was transported to the Lindenwold Police
Department for processing, and upon arrival, complained of his

4

arrested and prosecuted him in 2008 for failing to comply with

the GPS monitoring requirements of SOMA because he never should

have been subjected to those requirements. (Id. at 2-5.)

_____

wrist hurting.  The report relates that Plaintiff was
transported to a hospital, where Plaintiff was medically
cleared.  Plaintiff was taken back to the Lindenwold Police
Department and then transferred to the Camden County Jail.

　　Also attached to Plaintiff's complaint is the Lindenwold
Police Report, which relates that at 10:12 p.m. two parole
officers arrived with Plaintiff at Lindenwold Police
headquarters, and as they were about to put Plaintiff in a cell,
Plaintiff stated his wrist was hurting him.  (Docket No. 1 at
15.)  The report further relates that Plaintiff stated he had
previously had an operation on his wrist and it was hurting from
the handcuffs, and started screaming that he wanted to go to the
hospital.  The report states that a Lindenwold officer told the
parole officers that Plaintiff needed to be medically cleared
before they would take custody of him.  Plaintiff returned from
the hospital at 2:33 a.m. after being cleared by the hospital.

　　To the extent a claim of excessive force can be construed
from the complaint, that claim fails.  In addition to the
applicability of several immunity principles, discussed in
detail below, in order to properly plead a claim against an
individual government defendant in a civil rights action, the
complaint must indicate how that defendant had personal
involvement in the alleged wrongdoing.  Evancho v. Fisher, 423
F.3d 347, 353 (3d Cir. 2005).  Plaintiff's complaint contains no
details regarding his handcuffing other than alleging that his
handcuffs were too tight and he required wrist surgery as a
result.  This conclusory statement is insufficient to state a
valid excessive force claim against any of the Defendants.  See
Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S.
544, 555 (2007); see also Shuman v. Raritan Township, 2016 WL
7013465, at *15-16 (D.N.J. 2016) (finding that the plaintiff's
excessive force claimed failed because of a lack of factual
support for one key element necessary to determine whether a
failure to loosen handcuffs constitutes excessive force, namely
how long the officer delayed in adjusting the handcuffs, and
without such facts the plaintiff had not alleged the officer's
conduct was objectively unreasonable).

Gahm, Petrone, and LaRue have moved to dismiss Plaintiff's claims, arguing that they are entitled to absolute immunity or, alternatively, qualified immunity, and because Plaintiff's complaint otherwise fails to state any cognizable claims against them. Plaintiff has not directly opposed Defendants' motions, but he has submitted numerous filings and four motions of his own, all of which the Court has considered.

## DISCUSSION

### A. Subject Matter Jurisdiction

Because Plaintiff has brought claims pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights, this Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

### B. Standard for Motion to Dismiss

The Defendants' motion to dismiss Plaintiff's claims based on various immunities is a challenge to this Court's subject matter jurisdiction, and is therefore decided under Federal Civil Procedure 12(b)(1). Cope v. Kohler, 2015 WL 3952714, at *3 (D.N.J. 2015) (citing Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357–58 (3d Cir. 2014)). Because Defendants mount a facial attack on jurisdiction as opposed to a factual attack, the Court accepts the allegations in the complaint as true and utilizes the standard for dismissal under Rule 12(b)(6), which also governs Defendants' motions to dismiss. Id. (citing

<u>Constitution Party</u>, 757 F.3d at 357–59).

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957); <u>Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.</u>, 40 F.3d 247, 251 (7th Cir. 1994); and then citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than

7

> conclusions, are not entitled to the assumption of
> truth." Third, "whe[n] there are well-pleaded factual
> allegations, a court should assume their veracity and
> then determine whether they plausibly give rise to an
> entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations

in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556

U.S. 662, 664, 675, 679 (2009)).

A district court, in weighing a motion to dismiss, asks

"not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claim."

Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416

U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our

decision in Twombly expounded the pleading standard for 'all

civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d

203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in

the coffin for the 'no set of facts' standard that applied to

federal complaints before Twombly."). "A motion to dismiss

should be granted if the plaintiff is unable to plead 'enough

facts to state a claim to relief that is plausible on its

face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at

570).

### C. Analysis

Plaintiff has brought his constitutional claims pursuant to

42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance,

regulation, custom, or usage, of any State or Territory,
subjects, or causes to be subjected, any citizen of the
United States or other person within the jurisdiction
thereof to the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws, shall be
liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress.

"By its terms, of course, the statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985). Thus, "[t]o establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993). In order to properly plead a claim against an individual government defendant in a civil rights action, the complaint must indicate how that defendant had personal involvement in the alleged wrongdoing, which can be shown through allegations of personal direction or of actual knowledge and acquiescence. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

### 1. Plaintiff's claims against Defendants Gahm, Petrone, and LaRue

Plaintiff claims that Gahm, Petrone, and LaRue committed false arrest, false imprisonment, and malicious prosecution in violation of his Fourth and Fourteenth Amendment rights when he

was arrested, charged, and prosecuted in 2008 through 2010 for
his failure to comply with the GPS monitoring requirements under
SOMA.  Plaintiff's complaint is sparse with details about how
each of these Defendants were involved.  For these three
Defendants, Plaintiff pleads the following:

1.    MR. JAMES R. GAHM #485 BECOME "LIABLE" FOR WRITTEN
COMPLAINT ON THE "PLAINTIFF" ON "ILLEGAL – CHARGE" G.P.S.
"DEVICE" WITH DEPRIVE PLAINTIFF, OF HIS PRIVACY AND FREEDOM, IN
SOCIALTY.

2.    MS. DANA PETRONE ESQ. ( CAMDEN – COUNTY – PROSECUTOR )
***MALICIOUS – PROSECUTION *** HAD FULL KNOWLEDGE SAID INCIDENT
HAD ABSOLUTELY NO-MERIT, FOR PROSECUTION. NO-VICTIM, NO-FUNDS,
NO-INCIDENT. . . .

6.    MR. ANDREW LARUE, OFFICER NEW JERSEY STATE PAROLE,
G.P.S. OFFICIAL WHO (FORCE) ALL THE ILLEGAL – ARREST MOVEMENT
AND LOCATION ON ( G.P.S. – DEVICE ).

(Docket No. 1 at 3.)

Based on these allegations, as well as the rest of
Plaintiff's complaint, it appears that Gahm and LaRue were
involved in identifying the malfunctioning of Plaintiff's GPS
device, and directing that Plaintiff be arrested for a violation
of SOMA.  It appears that Petrone was the county prosecutor who
prosecuted the SOMA violation charge, which ultimately resulted
in Plaintiff pleading guilty to that charge.  The Court

extrapolates that Plaintiff claims these Defendants are liable for the harm he suffered while on the GPS monitor (four years) and while incarcerated (three years) because he never should have been subjected to SOMA in the first place.

Plaintiff's claims against these Defendants fail for several reasons:

1.    Plaintiff does not indicate in his complaint whether he is suing Gahm, Petrone, and LaRue in their official or individual capacities.  To the extent that Plaintiff has asserted his claims against these Defendants in their official capacities, such claims are barred under the Eleventh Amendment. See Betts v. New Castle Youth Development Center, 621 F.3d 249, 254 (3d Cir. 2010) (explaining that because state governments and their subsidiary units are immune from suit in federal court under the Eleventh Amendment, individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because official-capacity suits generally represent only another way of pleading an action against the state); Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) (holding that neither a State nor its officials acting in their official capacities are "persons" under § 1983); Grohs v. Yatauro, 984 F. Supp. 2d 273, 280 (D.N.J. 2013) (citing Will, 491 U.S. at 65–66) ("The state's sovereign immunity [] is preserved under Section 1983; a state is therefore not a

"person" who may be sued under Section 1983."); Wright v. State, 778 A.2d 443, 462 (N.J. 2001) (explaining that when county prosecutors perform their law enforcement function, they act as agents of the State).

2.   If Plaintiff has intended to pursue his claims against Gahm, Petrone, and LaRue in their individual capacities, these Defendants are entitled to immunity under two immunity doctrines - absolute immunity and qualified immunity.  Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982) (recognizing absolute immunity and qualified immunity as two kinds of immunity under § 1983).

　　　　a.   *Absolute Immunity*

Prosecutors are afforded absolute immunity for acts that are "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and . . . presenting the State's case."  Yarris v. County of Delaware, 465 F.3d 129, 135 (3d Cir. 2006) (quoting Imbler v. Pachtman, 424 U.S. 409, 431 (1976)).  Similarly, parole officers are entitled to absolute "quasi-judicial" immunity for actions taken in their adjudicatory capacities.  Williams v. Consovoy, 333 F. Supp. 2d 297, 299 (D.N.J. 2004) (citing Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989)) (other citations omitted).  Absolute immunity does not extend, however, to a prosecutor's or parole officer's administrative duties.  Yarris, 465 F.3d at 135

(quoting Buckley v. Fitzsimmons, 509 U.S. at 273) (other
citations omitted); Williams, 333 F. Supp. 2d (citing Wilson,
878 F.2d at 775).

Plaintiff bases his claims against Petrone on her
prosecution of Plaintiff's violation of SOMA, and Plaintiff
bases his claims against Gahm and LaRue on their actions
relative to his arrest for his SOMA violation.  Plaintiff's
complaint does not contain any allegations that these Defendants
acted outside of their prosecutorial or adjudicatory capacities.
These Defendants are therefore entitled to absolute immunity to
Plaintiff's claims against them.

b.  *Qualified Immunity*

"Qualified immunity shields government officials from civil
damages liability unless the official violated a statutory or
constitutional right that was clearly established at the time of
the challenged conduct."  Reichle v. Howards, 566 U.S. 658, 664
(2012).  In order to determine whether a government official is
entitled to qualified immunity, two questions are to be asked:
(1) has the plaintiff alleged or shown a violation of a
constitutional right, and (2) is the right at issue "clearly
established" at the time of the defendant's alleged misconduct?
Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Considering the second question first, "'clearly
established' for purposes of qualified immunity means that

'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'"  Wilson v. Layne, 526 U.S. 603, 614–15 (1999) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Under this standard, it is indisputable that when Gahm, Petrone, and LaRue had Plaintiff arrested and prosecuted for his violation of SOMA, the retroactive application of SOMA had not yet been invalidated by the New Jersey Supreme Court. Plaintiff has not pleaded any claims that these Defendants should have known that six years after Plaintiff's arrest and four years after his guilty plea that the application of SOMA to Plaintiff would be declared unconstitutional.  At the time Defendants interacted with Plaintiff in 2008 through 2010, Defendants would not have understood that the application of SOMA to Plaintiff was unlawful.  Accordingly, Gahm, Petrone, and LaRue are entitled to qualified immunity on Plaintiff's claims against them.

3.    Even if Gahm, Petrone, and LaRue were not afforded immunity, Plaintiff's complaint fails under Twombly/Iqbal. Plaintiff makes barebones, conclusory allegations against these

Defendants that they are liable for the injuries he suffered during the seven years he spent on GPS monitoring and in prison for the SOMA violation because the statute imposing such penalties, which was lawful at the time of these Defendant's actions, became unlawful in the future.

In order to maintain his false imprisonment, false arrest, and malicious prosecution claims, Plaintiff must show that he was seized, arrested, and prosecuted without probable cause. See James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012) (citations omitted) ("To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause."); Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964) (citations omitted)) (just like with a false arrest claim, a claim for false imprisonment is that a seizure is made without probable cause); Johnson v. Bingnear, 441 F. App'x 848, 851 (3d Cir. 2011) (quoting McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009)) ("In order to prevail on a Constitutional claim of malicious prosecution, a plaintiff must demonstrate that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than

bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."); Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (providing that an officer has probable cause to arrest when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested").

Here, Plaintiff has not pleaded that he was seized, arrested, and prosecuted without probable cause. The probable cause for his arrest and prosecution derived from SOMA, and SOMA was not deemed inapplicable to Plaintiff at the time of his arrest and prosecution. The 2014 decision of the New Jersey Supreme Court that invalidated SOMA to situations like Plaintiff's does not undermine the basis for Plaintiff's arrest and prosecution in 2008 through 2010.

Moreover, attached to Plaintiff's complaint is the March 4, 2008 arrest warrant for Plaintiff's violation of the GPS monitoring system, which finds probable cause for his arrest and is signed by a judge. (Docket No. 1 at 13.) "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an

objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" <u>Messerschmidt v. Millender</u>, 565 U.S. 535, 547 (2012) (citation omitted). An exception exists where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." <u>Id.</u> (citation omitted). The threshold for establishing this exception is a high one, however. <u>Id.</u> (citations omitted). Plaintiff has pleaded no facts to suggest "the issuance of the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." <u>Id.</u> (citation omitted). Consequently, Plaintiff's claims against Gahm, Petrone, and LaRue fail as a matter of law.

In sum, Plaintiff's claims against Gahm, Petrone, and LaRue are barred by the doctrines of sovereign immunity, absolute immunity, and qualified immunity, and they also fail to state cognizable claims against these Defendants. Even though the Third Circuit "supports the notion that in civil rights cases district courts must offer amendment - irrespective of whether it is requested - when dismissing a case for failure to state a claim," the caveat to that notion is that leave to amend should not be provided "if doing so would be inequitable or futile." <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 482 F.3d 247, 251 (3d Cir. 2007). It is evident that permitting Plaintiff to file an amended complaint to reassert these claims

against Gahm, Petrone, and LaRue would be futile. As a result, Plaintiff's claims against these Defendants will be dismissed with prejudice. <u>Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania</u>, 877 F.3d 487, 494 (3d Cir. 2017) (upholding the district court's dismissal of the plaintiff's claims with prejudice and not providing the plaintiff with leave to amend because the plaintiff had not proposed any amendments that would cure the fundamental deficiency in his claims and it did not appear that he could do so); <u>Yoder v. Morrow</u>, 671 F. App'x 27, 29 (3d Cir. 2016) (citing <u>United States ex rel. Schumann v. Astrazeneca Pharm. L.P.</u>, 769 F.3d 837, 849 (3d Cir. 2014)) (agreeing with the district court that amendment of the complaint would be futile, and therefore finding that the district court did not err when it dismissed the complaint with prejudice).

## 2. Plaintiff's claims against Defendants Jordan, Samalonis, Burrows, and Barreman

As noted above, Plaintiff's complaint also asserts claims against Defendants "Sgt. Steven Jordan, Manager New Jersey State Parole," Mr. James Samalonis, G.P.S. / Officer-of-N.J.S.P.," "Mr. PTLM – Burrows, Lindenwold Police Officer," and "Mr. Ronald Berreman, G.P.S. – Officer-of-N.J.S.P." Plaintiff claims the following as to these four Defendants:

3. SGT. STEVE JORDAN, SUPERVISOR OF THE NEW JERSEY STATE

PAROLE OFFICE, "ILLEGAL- UPHELD" AND ENFORCE- ILLEGAL ENFORCE TO

WEAR DEVICE- G.P.S. MONITORING 30:4-123.85 WHERFORE THE

PLAINTIFF, FALLS CLEARLY UNDER THE EX- POST- FACTOR OR RILEY VS.

N.J.S.P. (OVER-RULED DECESION). SUPPORT PLAINTIFF, CLAIM.

    4.    MR. JAMES SAMALONIS, "FORCELY" -GRAB, THE PLAINTIF

WITH ARREST FORCE FOR THE "ILLEGAL- G.P.S. DEVICE, FORCE UPON

THE PLAINTIFFS BODY DAY AND NIGHT WEARING IN AND OUT SHOWER,

RASH AND DISCONFORT ON DAILY BASIC, SEVEN DAYS A WEEK.

    5.    MR.PTLM BURROWS, OFFICER OF LINDENWOLD POLICE

DEPARTMENT, ASST, IN THE FALSE-ARREST, BY ENFORCE THE PLAINTIFF,

TO USE OR WEARING OF ILLEGAL- G.P.S. MONITOR. . . .

    7.    MR.RONALD BERREMAN NEW JERSEY STATE PAROLE, G.P.S.

OFFICIAL WHO "FORCE" ALL THE ILLEGAL-ARREST MOVEMENT AND

LOCATION ON G.P.S DEVICE.

    (Docket No. 1 at 3.)

As with Defendants Gahm, Petrone, and LaRue, Plaintiff

claims that these Defendants are liable for his injuries

relative to his arrest and incarceration for the SOMA violation.

Plaintiff, however, has not served Jordan, Samalonis, or

Berreman with his complaint.  For Burrows, Plaintiff has

provided proof of service of his complaint on Burrows, he has

obtained a clerk's entry of default as to Burrows, and Plaintiff

has moved for default judgment against Burrows.  The Court will

address Plaintiff's claims against Burrows separately from his

claims against Jordan, Samalonis, and Berreman.

       a.   *Plaintiff's claims against Jordan, Samalonis, and Berreman*

As a primary matter, Plaintiff's claims against Jordan, Samalonis, and Berreman may be dismissed for Plaintiff's failure to comply with Federal Civil Procedure Rule 4(m). Rule 4(m) provides, "If a defendant is not served within 90 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Showing good cause "'requires a demonstration of good faith on the part of the party seeking enlargement and some reasonable basis for noncompliance within the time specified by the rule.'" <u>John Vorpahl v. The Kullman Law Firm</u>, 2018 WL 813879, at *2 (D.N.J. Feb. 8, 2018) (quoting <u>Veal v. United States</u>, 84 F. App'x 253, 256 (3d Cir. 2004)) (other citations omitted). Three factors are considered when determining whether good cause exists: "'(1) reasonableness of plaintiff's efforts to serve, (2) prejudice to the defendant by lack of timely service, and (3) whether plaintiff moved for an enlargement of time to serve.'" <u>Id.</u> (quoting <u>MCI Telecommunications Corp. v. Teleconcepts, Inc.</u>, 71

F.3d 1086, 1097 (3d Cir. 1995)) (other citations omitted).  Even
if a plaintiff fails to show good cause, however, the district
court must still consider whether any additional factors warrant
a discretionary extension of time.  Petrucelli v. Bohringer &
Ratzinger, 46 F.3d 1298, 1307 (3d Cir. 1995).

Plaintiff has not provided the Court with any information
as to why he has not served Defendants Jordan, Samalonis, and
Berreman.  The Docket reflects that on March 15, 2018, the
summonses were returned as unexecuted on these Defendants, and
it does not appear that Plaintiff has made any further efforts
to effect service on them.[5]  Thus, Plaintiff's lack of compliance
with Rule 4(m) warrants the dismissal of his claims against
Jordan, Samalonis, and Berreman without prejudice.

Because, however, Plaintiff is proceeding pursuant 28
U.S.C. § 1915, his complaint is subject to sua sponte assessment

---

[5] When Plaintiff filed his complaint, he submitted an application
to proceed without prepayment of fees ("in forma pauperis" or
"IFP application") under 28 U.S.C. § 1915, and his complaint was
therefore subject to sua sponte screening by the Court, see 28
U.S.C. § 1915(e)(2)(B).  The Court granted Plaintiff's IFP
application (Docket No. 3), and ordered the Clerk to mail to
Plaintiff a transmittal letter explaining the procedure for
completing United States Marshal ("Marshal") 285 Forms ("USM-285
Forms").  It appears that Plaintiff returned the 285 Forms to
the Marshal, who then attempted service, but the Marshal was
unable to do so for the reasons indicated on the 285 Forms: "Not
employed by NJ Dept of Parole".  (Docket No. 27, 28, 30.)

by the Court.[6]  Under § 1915(e)(2)(B)(ii), the court shall

dismiss the case at any time if it determines that the action

fails to state a claim on which relief may be granted.

Millhouse v. Heath, 866 F.3d 152, 161 (3d Cir. 2017).

Additionally, where a district court explicitly concludes that a

complaint reveals an immunity defense on its face, it may

dismiss with prejudice the complaint for failure to state a

claim upon which relief may be granted pursuant to §

1915(e)(2)(B)(ii).  Id.

　　Plaintiff's complaint alleges that Jordan, Samalonis, and

Berreman are New Jersey State Parole Officers who should be

liable for Plaintiff's injuries resulting from the GPS

monitoring and incarceration due to his SOMA violation.

Plaintiff's claims against these Defendants fail for the same

reasons as Plaintiff's claims against Defendants Gahm and LaRue

---

[6] The Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-
810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"),
directs district courts to sua sponte dismiss any claim that is
frivolous, is malicious, fails to state a claim upon which
relief may be granted, or seeks monetary relief from a defendant
who is immune from such relief.  "The legal standard for
dismissing a complaint for failure to state a claim pursuant to
28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing
a complaint pursuant to Federal Rule of Civil Procedure
12(b)(6)."  Schreane v. Seana, 506 F. App'x 120, 122 (3d Cir.
2012) (citing Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir.
2000)); Mitchell v. Beard, 492 F. App'x 230, 232 (3d Cir. 2012)
(discussing 28 U.S.C. § 1997e(c)(1)); Courteau v. United States,
287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. §
1915A(b)).

– under the doctrines of sovereign immunity, absolute immunity, and qualified immunity, as well as for failing to state viable claims against them.  Consequently, Plaintiff's claims against Defendants Jordan, Samalonis, and Berreman must be dismissed with prejudice.

   b.   *Plaintiff's motion for default judgment against Burrows*

Plaintiff claims that Lindenwold Police Officer Burrows falsely arrested him for the GPS device failure and resulting SOMA violation.  Plaintiff has filed a motion for default judgment in his favor on his claim against Burrows.  Plaintiff's motion, however, does not provide any more specifics as to Burrows' involvement, or articulate why Plaintiff should be entitled to judgment in his favor on his false arrest claim.

"Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading."  Chanel v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)).  However, a party seeking default judgment "is not entitled to a default judgment as of a right." Franklin v. Nat'l Maritime Union of America, 1991 U.S. Dist. LEXIS 9819, at *3-4 (D.N.J. 1991) (quoting 10 Wright, Miller & Kane, Federal Practice and Procedure § 2685 (1983)), aff'd, 972

F.2d 1331 (3d Cir. 1992).  The decision to enter a default

judgment is "left primarily to the discretion of the district

court."  <u>Hritz v. Woma Corp.</u>, 732 F.2d 1178, 1180 (3d Cir.

1984).

   Although every "well-pled allegation" of the complaint,

except those relating to damages, are deemed admitted, <u>Comdyne</u>

<u>I. Inc. v. Corbin</u>, 908 F.2d 1142, 1149 (3d Cir. 1990), before

entering a default judgment the Court must decide whether "the

unchallenged facts constitute a legitimate cause of action,

since a party in default does not admit mere conclusions of

law," <u>Chanel</u>, 558 F. Supp. 2d at 535 (citing <u>Directv, Inc. v.</u>

<u>Asher</u>, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14,

2006)).  "Three factors control whether a default judgment should

be granted: (1) prejudice to the plaintiff if default is denied,

(2) whether the defendant appears to have a litigable defense,

and (3) whether defendant's delay is due to culpable conduct."

<u>Chamberlain v. Giampapa</u>, 210 F.3d 154, 164 (3d Cir. 2000);

<u>United States v. $55,518.05 in U.S. Currency</u>, 728 F.2d 192, 195

(3d Cir. 1984).  If a review of the complaint demonstrates a

valid cause of action, the Court must then determine whether the

plaintiff is entitled to default judgment.

   Plaintiff has not presented a valid cause of action against

Burrows for which he is entitled to judgment.  Burrows, as an

employee of a municipality, is a "person" under § 1983, but

Plaintiff's false arrest claim against Burrows fails because Burrows is entitled to qualified immunity, and because the false arrest claim fails as a matter of law. As discussed above with regard to the other Defendants, at the time Burrows interacted with Plaintiff in 2008, Burrows would not have understood that the application of SOMA to Plaintiff was unlawful. Thus, because Plaintiff has not claimed that Burrows violated a clearly established right, Burrows is entitled to qualified immunity for Plaintiff's claim against him. See Reichle, 566 U.S. at 664.

Relatedly, as also discussed above for the other Defendants, the constitutional validity of applying SOMA to Plaintiff was not in doubt at the time Burrows was involved in Plaintiff's arrest, and therefore Plaintiff has not pleaded that Burrows lacked probable cause to arrest Plaintiff. See James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012) (citations omitted) ("To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause.").

Consequently, Plaintiff is not entitled to default judgment in his favor on his false arrest claim against Burrows.[7]

---

[7] As noted above, *supra* note 4, attached to Plaintiff's complaint is the Lindenwold Police Report for Plaintiff's arrest. (Docket

Moreover, the Court must dismiss with prejudice Plaintiff's false arrest claim against Burrows pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

> **3.    Plaintiff's "motion for jury trial," "motion for a hearing," and motion to appoint pro bono counsel**

Also pending are Plaintiff's "motion for jury trial," "motion for a hearing," and motion to appoint pro bono counsel. Because the Court has dismissed with prejudice all of Plaintiff's claims against all Defendants, Plaintiff's motions will be denied as moot.

## CONCLUSION

Plaintiff spent years on GPS monitoring and in prison pursuant to a law that was later determined to be unconstitutional as applied to him.  In addition to the restraint of his liberty while on GPS monitoring and in prison, Plaintiff suffered serious bodily injuries while in prison, including being viciously beat with a lock by one of his cell mates, as well as his claims that he was raped by his cell mate.[8]

_____

No. 1 at 15.)  The report states that at 2153 hours (9:53 p.m.) on March 4, 2008, Burrows was dispatched to Plaintiff's residence to assist the New Jersey Division of Parole with apprehending Plaintiff.  "When Ptlm. Burrows arrived at the scene they advised that they had Mr. Edwards in custody and that they were alright."  (Id.)  This document, when incorporated as part of Plaintiff's pleadings, further demonstrates the lack of any viable claim against Burrows.

[8] Plaintiff has filed eleven other actions in this Court against

Considering what Plaintiff has experienced, the Court is not unsympathetic to Plaintiff's feelings of injustice. Defendants in this case, however, cannot be held liable as a matter of law for the claims Plaintiff has asserted against them. An appropriate Order will be entered.

Date: <u>November 1, 2018</u>       <u>s/ Noel L. Hillman</u>
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.

---

various defendants arising out of his GPS monitoring and what occurred while he was incarcerated due to the SOMA violation charge. <u>See</u> <u>EDWARDS v. THE HILLMAN GROUP, COMPANY et al.</u> 1:18-cv-11955-NLH-JS; <u>EDWARDS V. GRANT</u> 1:17-cv-07229-NLH-KMW; <u>EDWARDS v. THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY et al.</u> 1:14-cv-02802-NLH; <u>EDWARDS v. FALVEY</u> 3:14-cv-05753-PGS-TJB; <u>EDWARDS v. COMMISSIONER OF SOCIAL SECURITY</u> 1:13-cv-07731-NLH; <u>EDWARDS v. STATE OF NEW JERSEY</u> 3:13-cv-06523-PGS; <u>EDWARDS v. V.C.C.B. BOARD MEMBERS et al.</u> 1:13-cv-03635-NLH-JS; <u>EDWARDS v. BAYSIDE STATE PRISON et al.</u> 1:13-cv-00833-NLH-AMD; <u>EDWARDS v. UNIVERSITY OF MEDICINE AND DENTISTRY OF NEW JERSEY et al.</u> 1:13-cv-00448-RBK; <u>EDWARDS v. STATE OF NEW JERSEY et al.</u> 1:13-cv-00214-NLH-JS; <u>EDWARDS v. THE STATE OF NEW JERSEY et al.</u> 1:08-cv-05617-RMB-KMW.